## COUNTY OF PROVIDENCE, MARCH TERM, 1864, AT PROVIDENCE.

PRESENT:

HON. SAMUEL AMES, CHIEF JUSTICE.
HON. GEORGE A. BRAYTON, } JUSTICES.
HON. J. RUSSELL BULLOCK, }

---

THE NATIONAL MUTUAL FIRE INSURANCE COMPANY *v.* ALBERT D. YEOMANS.

In a suit by a mutual insurance company, acting under a charter of incorporation, against one of its members to recover assessments, its due incorporation, organization, and right under its charter to act, is, in the absence of proof to the contrary, to be presumed; if, indeed, the defendant is not estopped, in such case, from denying them.

Where the charter of such a company required that, $1,000,000 of insurance should be subscribed for before the company should be entitled to insure, the absence of any proof, in the minute book of the corporate proceedings, that such subscriptions had been obtained, does not even tend to prove, that no such subscriptions had been made.

It is no objection to the validity of an assessment on a mutual policy, that at or about the time the policy was issued, four other policies were issued by the

same company, upon the back of which were written agreements, signed either by the secretary of the company or by brokers who procured the policies, stipulating that the insured should not be liable to assessments thereon: it being proved, that the agreements were wholly unauthorized by the directors of the company, the policies assessed and the assessments paid as in case of other policies, and that the amount of the assessment of the defendant's policy was not at all affected by such agreements.

Where the charter of a mutual insurance company provides, that *the amount* of assessments remaining unpaid after thirty days demand shall be recovered by action, it is not competent to the company to increase the rate of damages, thus fixed, by a by-law requiring in such case ten per cent. per month on the unpaid assessments, in addition; the *amount* of the assessments, embracing however, simple interest after default in payment; and where a verdict had been taken under the direction of the court, for the penalty, as well as for the amount of the unpaid assessments, it was allowed to stand, only on condition that the plaintiffs should remit upon the record, the excess of the same over the amount of the assessments, with interest.

ASSUMPSIT by an incorporated mutual fire insurance company, to recover of the defendant, one of its members, in contribution to its losses, certain assessments made upon him by the directors, under four several policies of fire insurance effected by him with the company.

The case was tried at the December term of the Court of Common Pleas, for the county of Providence, before Mr. Justice Shearman, with a jury, under the general issue; it being agreed that the defendant might offer in proof any evidence, under said plea, that he might, under any plea in abatement, or bar, in the case.

Upon the trial, the defendant objected to the passing of any evidence to the jury, touching his liability for assessments, until the plaintiffs had first proved, or agreed to prove, in their opening, their right to organize, and legal organization under their charter, and that no recovery could be had in the action, until it was shown, under the 5th section of their charter, that the sum of $1,000,000 had been subscribed to be insured by the associates, before issuing policies, or before the 7th day of September, 1858, the date of the defendant's first policy. The defendant also contended, that as it did not appear, from the record of the first meeting of the corporation, produced by the defendant, that any of the persons named in the act of incorporation were present at that meeting, although it was called by

one of them, or that any vote was taken by such persons to associate any others with them, or that any of the persons purporting by said record to have been elected directors or officers of the corporation were subscribers for any sum to be insured by said corporation, that the plaintiffs had no legal existence, as a corporation, and no standing in court. The defendant also offered the record book of the corporation, to show, *that it did not appear from it* that the sum of $1,000,000 had been subscribed to be insured by the associates prior to their issuing of policies, or before the 7th day of September, 1858 ; which the court refused to admit for that purpose.

The defendant having submitted evidence tending to prove, that without the knowledge or consent of the directors of said company, the secretary of the company had issued two policies, and brokers obtaining risks for said company, but not shown to be agents of it, had procured two others, upon which policies were agreements, signed by the secretary in two cases, and by the brokers in the other two, that the insured should not be liable to assessment, which policies were outstanding when policies were issued to the defendant; the defendant requested the court to instruct the jury, that if they should find such agreements to have been made, that there was no mutuality of contract between the plaintiffs and defendant, and that they should return a verdict for the defendant ; notwithstanding, it was also proved, that when the existence of such policies became known to the president of the company, he disavowed them and forbade any such acts for the future, and that, notwithstanding such agreements; the parties thus insured were assessed, as others, and paid their assessments, though not before the defendant was assessed, in the same manner as if no such agreements had been made.

The secretary of the company having sworn, that the penalty of ten per cent. per month, provided for in the 26th article of the by-laws of the company, had never been enforced against any except those whom the company had sued for an assessment, although a great many persons had not paid their assessments until sometime after they had become due, and notice had been

given to such delinquents, the defendant requested the court to charge the jury, to return a verdict for the defendant; because the company sought to enforce against the defendant what they had not required of others, and thereby destroyed the mutuality of the contract between themselves and the defendant; although it also appeared, that neither the company, nor the directors, had, by vote, ever dispensed with the enforcement of the 26th article of the by-laws, or authorized any remission of the payment or penalty required by the same. The defendant further requested the court to charge the jury, that the addition of ten per cent. per month, provided for by the by-law of the company, against delinquents, and which was claimed of the defendant in this action, could not be recovered : *first*, because it had not been enforced against others, who had neglected to pay their assessments within the time fixed; and *second*, because the by-law, itself, was illegal, being unauthorized by the charter of the company, and inconsistent with the laws of the State, and because it was unreasonable, unconscionable, and oppressive.

The judge presiding at the trial, overruled all the above objections, and points of defence taken, and refused to instruct the jury as above requested; whereupon, the defendant excepted, and the jury having returned a verdict for the plaintiffs for their full claim, amounting to the sum of fifty-seven dollars and forty-two cents, the defendant now brought his exceptions to this court, for review in matter of law.

The 5th section of the charter of the plaintiffs, referred to in the above exceptions, was as follows :

"Sec. 5. When the sum subscribed to be insured by the associates, shall amount to one million of dollars, the said corporation may, and they are hereby authorized to insure, for a term not exceeding five years, all kinds of real and personal property, against loss or damage by fire. And in case any member shall sustain loss or damage over and above the then existing funds of said corporation, the directors may assess such further sum or sums upon the policies of the members, in pro-

portion to the premium paid at the time of insuring, as may be necessary to pay such damage or loss. Provided, however, that no individual member, during the term of one year, shall be held to pay, by way of assessment, more than ten times the amount of premium money which he shall be required to pay for the insurance that year."

The 26th article of the by-laws of the company, referred to in the above exceptions, was as follows:

"ART. 26. All assessments made by the directors must be advertised in some newspaper published in Providence, for at least thirty days, before the expiration of which time they must be paid at the company's office, in default of which payment the company may add ten per cent. of the assessment to itself, and collect the same for each month's delay ; and in case of the non-payment of the assessment for two months after it is due, it shall be optional with the directors to terminate the policy."

*Hayes, for defendant and exceptant:—*

The record sets forth the facts of the case. By the record, it appears that it was agreed that any defence that could be taken under pleas in bar or abatement, might be taken with like effect as if pleaded.

I. The court erred in not requiring proof of the act of incorporation of the plaintiffs' company, in the opening of the plaintiffs' case. At common law, the plaintiffs would have been required to have made proof of their act of incorporation. The plaintiffs, having been notified under the rules, should have done so.

II. The court should have required, upon the objection of the defendant (which was equivalent to a plea), the plaintiffs to show that the persons claiming to have acted under the charter, at its organization, were legally entitled to do so, and to show their organization under the charter. Considering this point, in connection with the fourth exception, the court erred in its ruling and refusal to charge the jury ; because, had there been a plea to the

effect that the persons who claim to have been the National Mutual Fire Insurance Company, and to have used its charter, never were such company, and had no such authority, the plaintiffs would have been obliged, either to show their right to sue as such company, or the defendant would, upon such plea, have been permitted to offer evidence that the plaintiffs had no authority to act under that charter, but were, in fact, strangers to it. The grant by the legislature of a franchise, is a personal grant, and is to be held and used as a trust. Strangers to it have no more right to assume to be the corporation created by the legislature, than they have to be a copartnership to which they do not belong. The evidence of the acts of the company is to be found in their records. These records show, that none of the corporators named in the act were present at the meeting for organization, and no vote was taken to associate any person with them. *a.* Robert H. Ives, William Goddard, and their associates, were the persons to whom the franchise was granted. *b.* They never met; and, of course, that being so, they never accepted the charter either by vote or act, and never associated any persons with them;—in other words, they never organized as a company. Of course, having no corporate existence, they could have no successors—" *ex nihilo, nihil fit.*"

III.   The subscription, provided for in the fifth section of the charter of the company, was a condition precedent to any authority on the part of the corporation to insure against loss. *Salem Mill Dam Co.* v. *Ropes*, 6 Pick. 23 ; *Central Turnp. Co.* v. *Valentine*, 10 Pick. 142 ; *Littleton Mfg. Co.* v. *Parker*, 14 N. H. 543 ; *Oldtown and Princeton R. R. Co.* v. *Veazie*, 39 Me. 571. The court erred, as stated in the third exception, in not directing a non-suit upon failure to prove their compliance with this condition. *A fortiori* the court erred, as appears by the fifth exception, when it refused to allow evidence that the condition had not been complied with.

IV.   Without strict mutuality there can be no contract. When, therefore, the company, through its authorized agents (see sixth exception), makes contracts with insured parties, exonerating them from all liability (even though other officers of

the company subsequently repudiate the contract), and especially when the company uniformly assess one class of delinquents and as uniformly omit to assess another, there ceases to be any mutuality between the insured and the insurers, and the contract becomes broken. The court, therefore, erred in refusing to instruct the jury as stated in the sixth and seventh exceptions.

V. A corporation has no right, either by their charter, by statute, or at common law, to enact by-laws that are unjust and oppressive, much less that are illegal. Angell & Ames on Corporations, § 347. A by-law imposing, in the nature of interest for the forbearance in the payment of money, a tax of ten per cent. per month, or one hundred and twenty per cent. per annum, is, upon the face of it, unjust, oppressive and contrary to the law in relation to usury.

*James Tillinghast, for the plaintiffs:—*

I. The first three exceptions are clearly untenable. It is well settled, that a corporation suing on a contract made directly with itself, particularly a mutual insurance company, suing one of its members to recover an assessment, is not bound to prove, in detail, its organization and compliance with charter requisites, as a part of its *prima facie* case in the opening. Angell & Ames on Corporations, § 635, and cases cited; *Williams* v. *Cheney*, 3 Gray, 215; *Jones* v. *Dana*, 24 Barb. 395.

II. The fourth and fifth exceptions are equally untenable. 1. It is equally well settled, that a defendant contracting directly with the corporation, as such, and *a fortiori* a member of a mutual insurance company, sued for an assessment, is estopped to deny the existence of the company and its capacity to contract. Angell & Ames on Corporations, § 635, and cases cited; *Chester Glass Co.* v. *Dewey*, 16 Mass. 94; *White* v. *Coventry*, 29 Barb. (Sup. Ct.) 305; *Appleton Mutual Fire Insurance Co.* v. *Jesser*, 5 Allen, 446; *Steam Navigation Co.* v. *Weed*, 17 Barb. 378, and cases cited in opinion; *Trumbull County Mutual Fire Insurance Co.* v. *Horner*, 17 Ohio, 407. 2. Again, these subscriptions necessarily would not appear upon the record book of the corporation. They, of course, preceded the organization. 3. The

General Assembly have ratified the organization, by several times amending the charter. *White* v. *Coventry, supra.*

III. These guaranties, complained of in the sixth exception, were unauthorized acts of the secretary and brokers, and could not bind the company or the directors, were expressly disavowed when they came to their knowledge, and in making the assessments were entirely disregarded. They were, in fact, individual guaranties, and have been so treated by the company, and, indeed, as the exception shows, by the parties themselves, who have voluntarily paid notwithstanding them. But even if the parties guarantied could have avoided paying their assessments, inasmuch as they were equally assessed, certainly the defendant has not been injured by them, and cannot, therefore, complain. They are entirely *inter alios acta* without prejudice in any way to him.

IV. The seventh exception is without foundation. By the very terms of the by-law, it is optional with the company whether or not to enforce this additional percentage. And, certainly, the defendant cannot complain that it is not enforced against those who pay voluntarily, and is enforced against him and others who put the company to the expense of litigation. This is a highly reasonable exercise of their discretion. Whatever had been done in this regard, had been the individual act of the secretary, without any authority or knowledge on the part of the company.

V. Nor is this by law objectionable for either of the causes alleged in the last exception. The company has full power to make by-laws. Compare § 1 of charter, and §§ 1 and 2 Rev. Stats. chap. 125. Aside from statute, it is a power incident to the corporation. Angell & Ames on Corporations, § 325. And this necessarily supposes the power to enforce them by pecuniary penalties. Ibid, § 360, and cases cited. Even were it bad as a by-law it is good as a contract between the parties. By his application the defendant expressly agrees, to be bound by the *charter and by-laws* of the company. See *Jones* v. *Sisson,* 6 Gray, 288 ; Angell & Ames on Corporations, §§ 360 and 342, and cases cited ; *Cahill* v. *Kalamazoo Mutual Insurance Co.* 2 Doug. (Mich.) 138–9. It is similar to the frequent provision, that in case of default in payment of assessment the whole premium note may

National Mutual Fire Insurance Co. v. Yeomans.

be collected, which has always been enforced. *Jones v. Sisson*, 6 Gray, 288; *Rix v. Mutual Insurance Co.*, 20 N. H. 198; *Huntley v. Merrill*, 32 Barb. 626; *St. Louis Mutual Fire and Marine Insurance Co.* v. *Boeckler*, 19 Mo. 135; *Cahill v. Kalamazoo Mutual Insurance Co.* 2 Doug. (Mich.) 138–9. It is also highly reasonable, as enforcing prompt payment of the assessments, the sole reliance of the company for payment of losses.

AMES, C. J. The main questions raised by this record are questions of evidence, merely. To say, in a suit by a mutual insurance company against one of its members, the company being a corporation *de facto*, at least, whose corporate existence is acknowledged by the action and contract of the defendant, and which is permitted to act as a corporation by the legislature whose charter it affects to wield, that the due organization and right of the company to act under its charter, is, in the absence of proof to the contrary, to be presumed, is far within the line both of principle and precedent; and the only question has been, whether the defendant is not estopped to deny it, thus incidentally, for the purpose of avoiding an obligation into which he has deliberately entered, and upon the faith of which others have become co-insurer and co-insured with him. If, upon such a ground, he could avoid payment of his assessments,—the fund to which those members who have sustained losses by fire must look for their indemnity,—it would be very much like permitting him to practise a fraud upon them. It would be very difficult to contravene, upon principle, the decision of the Supreme Court of Massachusetts, in *Appleton Mutual Fire Insurance Co.* v. *Jesser*, 5 Allen, 446, that the lawfulness of the organization of a corporation *de facto*, for mutual insurance, cannot be impeached, collaterally, in an action to recover an assessment. At least, the learned judge, who tried this case below, did not err in holding, that, in the absence of proof to the contrary, it was to be presumed, that the plaintiffs had done all those things under their charter, which were required to enable them to act as a corporation for mutual insurance, and that the fact that the minute book of the corporate proceedings did not affirmatively show that these requisites had been complied with, did not con-

trol this presumption. The fact that this book did not contain evidence that, before the issuing of any policy, the sum of $1,000,000 had been subscribed to be insured, did not even tend to prove that such subscription had not been made. It is not the place in which we should expect to find such a subscription; and was properly excluded as proving by what was *not* in it, that no such subscription had been made. The subscription probably preceded the organization, as the basis upon which the corporation was entitled to insure.

Another exception presented to us is, that the judge who tried this cause did not, though requested, instruct the jury, that, because, of four policies issued by the plaintiffs during the period in which the defendant effected his policies with them, two bore endorsed a written agreement signed by the secretary of the company, and two signed by the brokers who procured them, that the holders of those policies were not to be liable to assessment, the assessments upon the defendant's policies were void. When the bill of exceptions finds that these agreements were wholly unauthorized by the board of directors and were repudiated by them; that the policy holders were assessed, notwithstanding the agreements, and paid their assessments, as others, and that the assessments sought of the defendant were not all affected in amount by this irregular conduct on the part of the secretary and of the brokers, it would be difficult to find a reason why the agreements should release the defendant from an obligation expressly assumed by him, unless upon the logic that a wrong attempted and repented of by one, sanctions a similar wrong persisted in by another.

The remaining exceptions turn upon the 23d article of the by-laws of this mutual insurance company, which is alleged to be illegal and oppressive, and, as construed in practice, unequal and unjust. Whatever may be the merits of ten per cent. per month upon unpaid assessments, as a means of inducing their prompt payment, the 8th section of the charter,* which

---

*Sec. 8. If any member of said corporation, or the legal representatives of any member, shall neglect or refuse to pay the amount which may be assessed

National Mutual Fire Insurance Co. v. Yeomans.

gives to the company an action to recover them, if they shall remain unpaid thirty days after demand, prescribes, as we read it, that *their amount* is to be recovered in such action,—which, of course, includes simple interest. The by-law, cannot, in this particular, add to the rule of damages thus fixed by the charter; and we shall do entire justice to both parties, by allowing the verdict to stand, on condition that the plaintiffs release, upon the record, the excess of the verdict over the proper amount of the same, thus ascertained. This will take away from the defendant all cause of complaint, since it will place him upon the footing of those most favored by the company in the exercise of the discretion that they seem to have assumed, as to the enforcement of the penalty of this by-law. Upon the above release, let judgment below be affirmed, and the clerk issue execution for the balance thereof, with costs.

upon his or their policy or policies of insurance, for the space of thirty days after demand shall have been made for payment of the same, in the manner the said corporation shall appoint, he or they shall be liable to the suit of the corporation therefor, in an action of the case in any court of competent jurisdiction; and the said corporation, having obtained judgment and execution for the amount, may, at their election, cause said execution to be levied upon the estate or property, whereon, by this act, they may have a lien for the same; and the officer having said execution, shall proceed to satisfy the same by the sale and conveyance of said estate or property, in the same manner as is provided by law in case of attachment of similar property or estate, on mense process or execution; and the owner or owners thereof, shall have the right of redeeming the same within one year, by paying to the purchaser or purchasers thereof, the amount of said execution and costs, with interest on the same at the rate of twelve per cent.